## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**JIMMY L. FLOWERS,**

     **Plaintiff,**

**vs.**                        **Case No.  1:17cv86-MW/CAS**

**NANCY A. BERRYHILL, Acting Commissioner of Social Security,**

     **Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI) filed pursuant to Title XVI of the Act and an application for a period of disability and Disability Income Benefits (DIB) filed pursuant to Title II of the Social Security Act.  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On June 12, 2013, Plaintiff, Jimmy L. Flowers, filed applications for DIB and SSI, alleging disability beginning January 1, 2013, based on diabetes, high blood pressure, chronic kidney disease, and leg neuropathy. Tr. 13, 195-210, 262.[1]  Plaintiff last met the insured status requirements for DIB on September 30, 2018.  Tr. 13.

Plaintiff's applications were denied initially on August 2, 2013, and upon reconsideration on November 22, 2013.  Tr. 13, 84-144.  On December 18, 2013, Plaintiff requested a hearing.  Tr. 13, 150-51.  The video hearing was held on June 24, 2015, before Administrative Law Judge (ALJ) Bernard Porter, and Plaintiff appeared in Gainesville, Florida, and the ALJ presided over the hearing from Jacksonville, Florida.[2]  Tr. 22, 50-83. Plaintiff was represented by N. Albert Bacharach, Jr., an attorney, but Pamela C. Dunmore, an attorney and appointed co-representative from the same firm, appeared at the hearing.  Tr. 13, 50, 147-49.  Plaintiff testified during the hearing.  Tr. 13, 54-77, 81-82.  A. Mark Capps, an impartial vocational expert, testified during the hearing.  Tr. 13, 77-80, 312-13

---

[1]  Citations to the transcript/administrative record, ECF No. 11, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

[2]  "At the hearing with the advice of his attorney, the claimant amended the alleged disability onset date to June 2, 2013."  Tr. 13, 73.

(Resume).  During the hearing, Exhibits 1A through 11F were received into evidence.  Tr. 53; *see* Tr. 22-26.  It appears that after the hearing, Exhibit 12F was filed consisting of treatment notes covering July 30, 2013, to January 6, 2015, from the Division of Nephrology at Shands Medical Plaza.  Tr. 26, 720-53; *see* Tr. 81.  These records were considered by the ALJ.  Tr. 18.  On August 6, 2015, the ALJ issued a decision and denied Plaintiff's applications for benefits, concluding that Plaintiff was not disabled from June 2, 2013, through the date of the decision.  Tr. 13-21.

On October 5, 2015, Plaintiff's counsel filed a two-page brief, which appears as Exhibit 16E.  Tr. 5, 314-15.  On October 6, 2015, Plaintiff requested review of the ALJ's decision.  Tr. 7-9.  On February 7, 2017, the Appeals Council noted that it had considered the two-page brief and denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6; *see* 20 C.F.R. § 404.981.

On April 10, 2017, Plaintiff, by counsel, filed a Complaint with this Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 23 and 26, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings:

1. "The claimant meets the insured status requirements of the Social Security Act through September 30, 2018."  Tr. 15.

2. "The claimant has not engaged in substantial gainful activity since June 2, 2013, the amended alleged disability onset date." *Id.*

3. "The claimant has the following severe impairments: hypertension; diabetes mellitus with neuropathy; chronic kidney disease; GERD, HIV disease; anemia; and obesity." *Id.*

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 16.

5. "[T]he claimant has the [RFC] to perform a reduced range of sedentary work and can lift and carry 10 pounds occasionally and 5 pounds frequently, sit for up to six hours, stand for up to two hours, and walk for up to two hours in an eight-hour workday. The claimant can push and pull as much as he can lift and carry. The claimant requires a sit/stand option that allows him to change positions between sitting and standing at least every 30 minutes. This is a brief positional change lasting no more than three minutes at a time where the claimant remains in the workstation during the positional change. The claimant is limited to occasional use of foot controls and occasional climbing of ramps and stairs though can never climb ladders or scaffolds. He can frequently balance, stoop, and crouch. He can kneel occasionally but can never crawl. The claimant cannot work around unprotected heights or around moving mechanical parts. He cannot work in environments where there are temperature extremes. Time off task would be accommodated by normal breaks." Tr. 16.

6. "The claimant is unable to perform any past relevant work." Tr. 19. The ALJ noted that the vocational expert testified that Plaintiff's past relevant work is classified in the Dictionary of Occupational Titles (DOT) as apartment maintenance worker, medium exertion, semi-skilled with an SVP rating of 3. *Id.*

7. The claimant was 43 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset

date and subsequently changed age category to a younger individual age 45-49.[3]  Tr. 19-20.

8.  "The claimant has a limited education and is able to communicate in English." Tr. 20. "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."  Tr. 20.

9.  The ALJ determined that "[i]f the claimant had the [RFC] to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.25 and Rule 201.19."  Tr. 20.  The ALJ determined, however, that Plaintiff's "ability to perform all or substantially all the requirements of this level work has been impeded by additional limitations," and, as a result, he "asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]."  The vocational expert testified that such an individual could perform the representative occupations such as food and beverage order clerk, table worker, and surveillance system monitor, all sedentary exertion, unskilled, with an SVP of 2.[4]  *Id.*; Tr. 79-80.

---

[3]  "If you are younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work.  However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work in persons who have not attained age 45.  See Rule 201.17 in appendix 2." 20 C.F.R. § 404.1563(c).

[4]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of 1 means "short demonstration only." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work

   10.    The claimant has not been under a disability, as defined in the
   Social Security Act, from June 2, 2013 through the date of the date
   of [the ALJ's] decision."  Tr. 21.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is

supported by substantial evidence in the record and premised upon correct

legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131

(11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less

than a preponderance.  It is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion."  Bloodsworth v.

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord*

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial

evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[5]

---

situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  "Sedentary work
involves lifting no more than 10 pounds at a time and occasionally lifting or carrying
articles like docket files, ledges, and small tools.  Although a sedentary job is defined as
one which involves sitting, a certain amount of walking and standing is often necessary
in carrying out job duties.  Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

   [5] "If the Commissioner's decision is supported by substantial evidence we must
affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,
1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard,
however, does not permit a court to uphold the Secretary's decision by referring only to
those parts of the record which support the ALJ.  A reviewing court must view the entire

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).  A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R.

---

record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

§§ 404.1505(a), 404.1509 (duration requirement).[6]

Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status.  *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[7]

---

[6]  The relevant DIB and SSI regulations are virtually identical.  As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise.  The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

[7]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the

---

physicians or other persons, and medical records. *Id.* Although an ALJ considers medical source opinions, the responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 4041546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."); *see also* Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor"). The Court will apply the SSR in effect when the ALJ rendered her decision. *See generally* Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

national economy in light of the claimant's RFC, age, education, and work experience.  <u>Phillips</u>, 357 F.3d at 1237; <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). An ALJ may make this determination either by applying the grids or by obtaining the testimony of a vocational expert.  <u>Phillips</u>, 357 F.3d at 1239-40; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211.

## IV.  Legal Analysis

### Substantial evidence supports the ALJ's evaluation of Plaintiff's report of pain, the medical evidence, and Plaintiff's RFC.

I.

Plaintiff makes two arguments.  First, Plaintiff argues the ALJ did not properly assess Plaintiff's claim that his pain prevents him from working. ECF No. 23 at 22.  Second, Plaintiff argues the ALJ should have credited

the opinions of one of Plaintiff's treating physician, John Colon, M.D., at the

Alachua County Health Department (Alachua).[8]  *Id.* at 22-31.

II.

The ALJ began his RFC analysis with a discussion of Plaintiff's

hearing testimony.  Tr. 17.

> The claimant alleges disability for pain and limitations resulting from
> his impairments.  At the hearing, the claimant testified that he is 45
> years old and has an 11[th] grade education.  He is single, has no
> children, and lives with his mother.  The claimant stands six feet one
> inch tall and weighs 280 pounds.  He has a valid driver's license and
> drives five times per week.  The claimant testified that he cannot
> work because his blood sugar is uncontrolled causing light-
> headedness and thirst.  He has neuropathy in his legs and feet
> causing pain on a daily basis.  The claimant tries to stay off his feet
> and elevates them.  He stated that his medication sometimes
> provides relief for the neuropathy.  Due to frequent falls, the claimant
> uses a cane that was recommended but not prescribed by a doctor.
> The claimant has HIV and stated that he experiences diarrhea most
> every day.  The claimant reported that he feels fatigued and is also
> anemic.  He has hypertension that is controlled with medication.
> The claimant testified that he feels tired all the time as a side effect
> from his medication.
>
> The claimant testified that he can sit for 15 minutes, stand for 15 or
> 20 minutes, walk 1/3 of a mile, and lift and/or carry 5 to 10 pounds.
> He gets along well with others, can follow a 30-minute television
> program, and is able to understand and remember simple
> instructions.  The claimant does his own laundry and can grocery
> shop.  He reported he spends the day taking care of his personal
> needs, praying, listening to music, watching television, and may take
> a walk for exercise.  The claimant attends church services on

---

[8]  The Commissioner characterizes Plaintiff's argument as limited to the second
issue and suggests the first issue was waived.  ECF No. 26 at 5 n.3.  The Court will
address both issues.

Sundays and bible study during the week.  He occasionally goes out to dinner or to the movies with his mother.

Tr. 17; Tr. 54-77, 81-82 (Plaintiff's hearing testimony).

The ALJ discusses the medical evidence.  On November 21, 2013, and on reconsideration at the agency level, David Guttman, M.D., a State agency physician

> opined that the claimant can lift and/or carry 50 pounds occasionally and 20 pounds frequently, stand and/or walk for six hours total in an eight-hour workday, and sit for six hours total in an eight-hour workday with normal breaks.  The claimant must avoid concentrated exposure to extreme heat and to hazards including machinery and heights (Exhibits 6A/8A) [Tr. 101-09, 111-19].  Limited weight is given to this opinion as the record on the whole reveals that the claimant has greater limitations than those issued by the State agency physician.

Tr. 17.[9]

The ALJ considered the opinion of Lance I. Chodosh, M.D., who performed a physical consultative examination on November 12, 2013.

> The claimant presented for physical consultative examination on November 12, 2013 with Dr. Lance I. Chodosh.  The claimant reported he is single, lives with family, completed the 11th grade, and is literate.  He is independent in his activities of daily living.  The claimant stated he has diabetes that is treated with insulin and experiences burning, numbness, and heaviness in his legs and feet.

---

[9]  Although not given the same controlling weight or deference as the opinion of treating physicians, the findings of a state agency medical consultant regarding the nature and severity of a claimant's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review.  *See* SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017). The findings of a State agency medical consultant may provide additional evidence to support the ALJ's findings.  *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

He also has high blood pressure that is not controlled with medication. Range of motion testing showed some limitations in the claimant's lumbar spine and bilateral hips though motion range was full in the remaining joints. Following examination and review of medical records, Dr. Chodosh diagnosed long-standing diabetes, complicated by mild to moderate peripheral sensory neuropathy. The claimant indicated chronic kidney disease but Dr. Chodosh noted that lab testing on April 22, 2012 showed a GRF of 71. The claimant has severe, uncontrolled hypertension, without obvious complications. Dr. Chodosh determined that the claimant can stand and walk frequently, but not continuously. He can sit. He can bend over at the waist occasionally. He cannot squat or kneel. The claimant cannot lift or carry more than 15 pounds. He can handle objects. He can see, hear, and speak normally (Exhibit 5F) [Tr. 435-43]. Although some of the evidence notes retinopathy, this source noted no such difficulties. Significant weight is given to this opinion as Dr. Chodosh reviewed records and examined the claimant prior to issuing an unbiased opinion that is well supported by the medical record on the whole.

*Id.*[10] Dr. Guttman was aware of Dr. Chodosh's evaluation. *See, e.g.,* Tr. 102, 107, 112, 117.

The record contains medical records from Alachua from June 28, 2011 to July 19, 2013, Tr. 400-34 (Exhibit 4F), and from April 17, 2013, to April 30, 2015, Tr. 526-719 (Exhibit 11F). The ALJ focused on patient records at Alachua from February 6, 2014, March 26, 2015, and April 8, 2015, and refers only to Exhibit 11F as follows:

Alachua County Health Department records dated February 6, 2014 note chronic marijuana use from age 15 until just one month ago. Testing on March 26, 2015 reveal that the claimant's HIV is

---

[10] Dr. Chodosh's objective findings support his opinion, which is consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3).

controlled as his CD4 count was 534 and his HIV viral load was undetected.  The claimant's glucose was 195.   The claimant receives medication management from this source [Tr. 532].  At a follow up visit on April 8, 2015, the claimant's HIV is described as asymptomatic and his hypertension is well controlled.  Though his diabetes is uncontrolled, it is without mention of complication (Exhibit 11F) [Tr. 531].  Significant weight is given to this opinion as it is recent and supported by the overall record revealing that the claimant's conditions of HIV and hypertension are well controlled with medication and that the diabetes has not resulted in any complication such as end organ damage.

Tr. 18.  In the Statement of the Facts, Plaintiff refers to these patient

records from Alachua.  ECF No. 23 at 7-8.  In the argument portion of the

memorandum, Plaintiff refers to the ALJ's step 2 findings and notes:

> Each of these impairments is objectively diagnosed.  In addition to the medical records from specialists in gastroenterology and nephrology, the medical records in this matter also include extensive treatment records from [Alachua] during the relevant time period.  The [Alachua] records encompass [ ] 227 pages.  It is important to note that there is objective proof that Plaintiff Flowers diabetes is uncontrolled on the face of the record.  Specifically, Plaintiff[']s diabetic neuropathy in both legs is the direct and proximate result of his uncontrolled diabetes. . . .

ECF No. 23 at 21-22.

The ALJ refers to nephrology records from Amir H. Kazory, M.D.,

from Shands at the University of Florida (Shands).  Tr. 18.

> Nephrology records from Dr. Amir H. Kazory at UF Health dated January 6, 2015 note the claimant measured six feet one inch tall and weighs 267 [sic] [276] pounds, amounting to a BMI of 36.48.  Dr. Kazory noted stage 3 chronic kidney disease; hypertension; HIV; diabetic nephropathy; proteinuria; and anemia.  Dr. Kazory prescribed medication (Exhibit 9F) [Tr. 455-56].  Same day Shands

> UF Nephrology Department notes state treatment for chronic kidney disease, stage III, with proteinuria likely due to diabetic nephropathy; hypertension (without evidence of primary hyperaldosteronism or RAS); diabetes mellitus type II, uncontrolled; diabetic neuropathy; and HIV diagnosed in November 2013 during the workup for proteinuria. The claimant receives medication management. He tolerates his HIV treatment well (Exhibit 12F) [Tr. 720].

Tr. 18. This limited discussion of Plaintiff's treatment at Shands ends the

ALJ's discussion of the patient records.

The ALJ then focuses on John Colon, M.D.'s, two evaluations of

Plaintiff. Tr. 18. (Plaintiff refers to Dr. Colon's evaluations in his

memorandum. ECF No. 23 at 9-10, 22-24, 29-30.)

> At the request of claimant's counsel, Dr. John Colon completed an RFC by Treating Physician form on February 10, 2015. Dr. Colon checked off that the claimant can sit and work for up to 30 minutes at a time but likely cannot work at a job at this point for even one hour a day, five days a week. The claimant can stand and work for less than 30 minutes per shift for not even one hour per day, five days a week. He cannot sit and/or stand at-will for a total of one hour per day, five days a week. The claimant can lift one to five pounds frequently and occasionally (Exhibit 7F) [Tr. 447-49]. No significant weight is given to these extreme limitations as they are not supported by treatment notes or by the medical evidence of record. Moreover, these restrictions amount to the claimant being practically bedridden which certainly is not the case. The opinion conflicts with the claimant's testimony of his abilities and daily activities.

> Dr. Colon completed a Clinical Assessment of Pain by Treating Physician on February 10, 2015 and checked off that the claimant experiences somatogenic pain that is neuropathic and sympathically maintained and continuous. The claimant is medicated with a non-opioid analgesic. The claimant subjectively reports marked pain that is supported by objective findings. Colon checked off that the claimant's pain moderately restricts his ability to maintain attention

and concentration for extended periods, extremely restricts his ability to perform activities within a schedule and to maintain regular attendance and be punctual within customary tolerances, has marked limitation in the ability to complete a normal workday and workweek without interruptions from pain and to perform at a consistent pace without an unreasonable and length or rest periods, and a moderate inability to interact appropriately with the general public (Exhibit 8F) [Tr. 450-54].  These limitations conflict with the claimant's testimony that he has no difficulty with concentration or memory and no problems in getting along with others.  Medical records do not indicate any problem with attendance or punctuality at scheduled appointments.  The opinion is not supported by treating notes or by the medical record on the whole; therefore, it is given minimal weight.

Tr. 18-19.[11, 12]

Aside from printed language on the evaluations, Tr. 447, 450,[13]

---

[11]  Dr. Colon's conclusions of disability would not be entitled to any special weight or deference, however.  The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017). In Lewis v Callahan, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.  Further, to the extent Dr. Colon opined Plaintiff "could not work, that was not a medical opinion and was not entitled to any special significance. 20 C.F.R. § 404.1527(d)."  Zambrano v. Soc. Sec. Admin., 2018 U.S. App. LEXIS 2531, at *9 n.1 (11th Cir. Jan. 30, 2018).

[12]  An ALJ may reject an opinion that is so brief and conclusory that it lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings.  Phillips v. Barnhart, 357 F.3d at 1240-41.

[13]  Both forms state: "Please answer each question as it relates to the claimant's condition from 06/28/2011 to Present, the dates you rendered treatment."  Tr. 447 (emphasis added), 450 (same); see Tr. 420 for June 28, 2011, patient notes in which Dr. Colon provided an addendum.  Plaintiff had been treated, among others, by

Dr. Colon does not mention treating Plaintiff in either evaluation.  Tr. 447-54.

Dr. Colon appears on two pages, Tr. 417 (Feb. 11, 2013) and Tr. 420 (June 28, 2011, *see supra* at n.13) in the Alachua patient records in Exhibit 4F, Tr. 400-34, compiled from June 28, 2011, to July 19, 2013.  *See* ECF No. 11-1, Court Transcript Index at 3.  Dr. Colon appears infrequently in the 194 pages of patient records from Alachua in Exhibit 11F, but without significant patient notes purportedly authored by Dr. Colon.  *See, e.g.*, Tr. 543 (Jan. 30, 2015, noting record update); 547 (Jan. 29-30, 2015, noting records reviewed and updated and plan comments, *e.g.*, "[w]ill discuss with Dr. Colon possible change to lyrica, in the mean time [sic] increasing gabapentin and referring to neuro, do not understand how patient not on disability given multiple co-morbidities."); 638 (Jan. 28, 2015, patient "trying to get [d]isability paperwork.  Asked for Dr. Colon.  Andrew was instructed to set up an appointment for client to come in with the required paperwork for Mike and Dr. Colon to sign.  [s]cheduled for 2/10/2015."); 636 (Feb. 10, 2015, "Client here today to pick up his ADAP Medications.  Issued Edurant 25mg.Epzicom under the direction of Dr. Colon."); 633 (Apr. 8, 2015,

---

Dr. Ernesto J. Lamadrid, until on or about February 11, 2013, when Dr. Colon is notified that Dr. Lamadrid is no longer working the clinic at ACHD.  Tr. 417.  The note states, in part: "Care coordination to Dr. Colon to place new rx in medical profile as given verbally and called in to [sic] pt's pharmacy."  Tr. 417.

same); 647-48 (Sept. 11, 2014, same); 647 (Aug. 12, 2014, same); 650-51

(July 15, 2014, same); 655-56 (May 16, 2014, same).  *See* ECF No. 11-1,

Court Transcript Index at 3.  Dr. Colon signed the two evaluations on

February 10, 2015.  Tr. 449, 454.

   The ALJ noted that Dr. Colon's restrictions were extreme and

amounted to Plaintiff "being practically bedridden which is certainly not the

case" and that the opinion conflicted with Plaintiff's testimony of his abilities

and activities.  Tr. 18; *see* 20 C.F.R. § 404.1527(c)(3)-(4); Dyer v. Barnhart,

395 F.3d 1206, 1212 (11th Cir. 1210).  For example, the ALJ noted Plaintiff

testified and reported that he was able to perform his activities of daily

living independently, do laundry, shop for groceries, attend church and

Bible study, eat in restaurants, and go to the movies.  Tr. 19, 70-72, 72-73,

437; *see infra* n.16.

   By itself, Dr. Colon's opinion might be persuasive evidence.  As noted

above, the ALJ considered Dr. Colon's evaluations and concluded in part

that they are not supported by treating notes or by the medical evidence of

record or the record on the whole.  Tr. 18-19; *see* 20 C.F.R. § 404.1512(c)

(3) ("the more a medical source presents relevant evidence to support an

opinion, particularly medical signs and laboratory findings, the more weight

we will give that opinion").

Further, as the ALJ noted, Dr. Colon's evaluations were a series of checkbox notations, Tr. 18, which courts have found are "not particularly informative" and are "weak evidence at best."  *See* <u>Teague v. Astrue</u>, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); <u>Dixon v. Astrue</u>, No. 5:09-cv-320/RS/EMT, 2010 U.S. Dist. LEXIS 125831, at *46-48 (N.D. Fla. Oct. 26, 2010) (explaining that ALJ properly rejected opinions expressed by treating physician on "check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms); <u>Jones v. Comm'r of Soc. Sec.</u>, 478 F. App'x 610, 612 (11th Cir. 2012) (unpublished) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations); *see also* <u>Foster v. Astrue</u>, 410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physicians use of "questionnaire" format typifies "brief or conclusory" testimony).  Simply put, Dr. Colon did not provide an acceptable explanation for his opinions or refer to objective medical evidence to

support his opinions.  *See* <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record and resolve conflicts that might appear. 20 C.F.R. § 404.1527.[14]  When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c)(1)-(6).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical

---

[14]  This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultative

examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This

requires a relationship of both duration and frequency."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating

physician must be supported by substantial evidence, Marbury v. Sullivan,

957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.

Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is

given to a treating physician's opinion and any reason for giving it no

weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at

1053.

The ALJ may discount the treating physician's opinion if good cause

exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986).

Good cause may be found when the opinion is "not bolstered by the

evidence," the evidence "supported a contrary finding," the opinion is

"conclusory or inconsistent with [the treating physician's own medical

records," the statement "contains no [supporting] clinical data or

information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); see Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017).  Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence,

such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC.

Substantial evidence supports the ALJ's consideration of the medical evidence of record, including Dr. Colon's evaluations. Aside from Dr. Colon's evaluations, no treating physician opined that Plaintiff's impairments are of such severity as to preclude him from working in any capacity.

Further, the ALJ properly determined that the medical evidence did not support Plaintiff's assessment of his inability to work due to his severe impairments.[15]

---

[15] The credibility of the claimant's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988). After considering a claimant's complaints of pain, an ALJ may reject them as not credible. *See* Marbury, 957 F.2d at 839 (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)). If an ALJ refuses to credit subjective pain testimony where such testimony is critical, the ALJ must articulate specific reasons for questioning the claimant's credibility. *See* Wilson v. Barnhart, 284 F.3d 1225. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Id.* Subjective symptoms can be overstated, so a claimant's subjective allegations of pain or other symptoms alone will not establish that she is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1528(a), 404.1529(a). Effective March 28, 2016, the Social Security Administration adopted SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 28, 2016), superseding SSR 96-7p, pertaining to assessing the claimant's credibility. SSR 16-3p "does not apply retroactively because it has no language suggesting, much less requiring, retroactive application." Contreras-Zambrano v. Soc. Sec. Admin., 2018 U.S. App. LEXIS 2531, at *8 (11th Cir. Jan. 30, 2018) (citation omitted).

After discussing Dr. Colon's evaluations and his assessment of the two evaluations, the ALJ considered Plaintiff's credibility.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

> In assessing the claimant's credibility, he partakes in a wide array of daily activities.[16]  The claimant reported that he performs his activities of daily living independently (Exhibit 5F) and testified to doing laundry, going grocery shopping, attending church services and bible study, and going out to eat and to the movies.  Such activities can be rather demanding and are not entirely inconsistent with the established residual functional capacity.  The claimant's reported activities are not the type expected given his alleged disabling symptoms and limitations.  The claimant's credibility is further affected by his decision to use illegal drugs on a chronic basis for many years (Exhibit 11F/84) [Tr. 609] and for at least some time after the amended alleged onset date.

> The care that the claimant has received has been relatively routine and conservative yet successful in controlling his symptoms.  The claimant receives medication management, which he testified helps reduce his symptoms, and physical therapy that is noted to be

---

16  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms. Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  But see Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).  Although the ALJ did not expressly refer to the three-part pain standard set forth in Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002), the ALJ's findings, discussion, and citation to 20 C.F.R. § 404.1529, Tr. 16, indicate that the pain standard was applied.  Wilson, 284 F.3d at 1226.

helpful (Exhibit 10F).[17]   He is asymptomatic with his HIV as his CD4 count is good and his viral load undetectable (Exhibit 11F).  The record does not reveal any recent hospitalizations or surgeries or that any surgeries are currently scheduled for the claimant.  His reported frequent falls are not supported by the evidence and no doctor has prescribed any assistive device.  His use of a non-prescribed cane does not affect his ability to perform sedentary work at the level noted in the residual functional capacity stated above.  The claimant's report of back pain is not supported by an objective finding of disk disease; however, a sit/stand option was given for his leg pain.

In sum, the above residual functional capacity assessment is supported by the frequency and type of treatment the claimant has received in response to his reported symptoms.  Although the claimant has limitations, they do not prevent him from performing work activity at the level noted in the residual functional capacity above.

Tr. 19.

Substantial evidence supports the ALJ's RFC assessment.  The ALJ properly performed his responsibility of evaluating the relevant evidence, including the evaluations of Dr. Colon, in assessing Plaintiff's RFC.  Tr. 16-19; *see* Ybarra v. Comm'r of Soc. Sec., 658 F. App'x 538, 543 (11th Cir. 2016) (unpublished).

Finally, substantial evidence supports the ALJ's RFC determination that Plaintiff can perform a reduced range of sedentary work with

---

17  *See, e.g.,* Tr. 64, 66, 463, 465, 469, 474, 477, 479, 482, 485, 488, 491, 495, 498, 502, 513, 517, 521.  *See also* Newberry v. Comm'r of Soc. Sec., 572 F. App'x 671,671-72 (11th Cir. 2014) (unpublished).

exceptions, Tr. 16, and reliance on the vocational expert's testimony that supported the ALJ's finding that Plaintiff could perform other jobs in the national economy.  No error has been shown.

## VI. Conclusion

Considering the record as a whole, the ALJ's findings are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 6, 2018.

s/ Charles A. Stampelos_____
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**